David J. Wolkenstein, Esq. (DW 0398)
LAW OFFICES OF DAVID J. WOLKENSTEIN
22 West 38th Street, 12th Floor
New York, New York 10018
(212) 725-4423
*Attorneys for Plaintiff, Patrick Shane*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PATRICK SHANE,                                             File No.  05CV2953 (LLS)(KNF)
                                                                                 ECF CASE
                                   Plaintiff,

    -against-                                                              **COMPLAINT**

360 GLOBAL WINE COMPANY, f/k/a
KNIGHTSBRIDGE FINE WINES, INC., JOEL SHAPIRO,
MICHAEL L. JEUB, PHILIP E. PEARCE and
LARRY KIRKLAND,

                                   Defendants
------------------------------------------------------------------------X

      Plaintiff, Patrick Shane by his attorneys, Law Offices of David J. Wolkenstein, as and for his complaint against the defendants alleges as follows:

1. Plaintiff Patrick Shane ("Shane") brings this action against the defendants to recover for the defendants' blatant and egregiously wrongful action in canceling his restricted shares of stock in Knightsbridge Fine Wines, Inc., a publicly traded company, without valid cause or basis, mere weeks before the shares were to become unrestricted and freely tradable in the public market. As a result of the defendants' actions, plaintiff has essentially been robbed of $1,416,000.

2. Plaintiff Shane is a natural person and resident of Altamonte Springs, State of Florida, with a primary address located at 601 Lake Avenue, Altamonte Springs, Florida.

3. Defendant 360 Global Wine Company f/k/a Knightsbridge Fine Wines, Inc.

1

("Knightsbridge"), is a Nevada Corporation with its principal place of business located at 1 Kirkland Ranch Road, Napa, California 94558. Knightsbridge Fine Wines, Inc. changed its name to 360 Global Wine Company, on or about February 24, 2005.

4. Defendant Joel Shapiro ("Shapiro"), is a natural person and resident of the State of Connecticut, with a primary address located at 171 Proprietor's Crossing. New Canaan, CT 06840. At all relevant times, Shapiro was the Chief Executive Officer of Knightsbridge, and was Chairman of the Board of Directors from the inception of the company until November 9, 2004. Shapiro remains a director of the company through the date of this complaint.

5. Defendant Michael L. Jeub ("Jeub") is a natural person and resident of the State of California, with a primary address located 12959 Chaparral Ridge Road, San Diego, California 92130.  At all relevant times, Jueb was a member of the Knightsbridge Board of Directors.

6. Defendant Philip E. Pearce ("Pearce") is a natural person and resident of the State of North Carolina, with a primary address located at 6624 Glenleaf Court, Charlotte, North Carolina 28270.  At all relevant times, Pearce was a member of the Knightsbridge Board of Directors.

7. Defendant Larry Kirkland ("Kirkland", and collectively with Pearce, Jeub an Shapiro, referred to as the "Directors") is a natural person and resident of the State of North Carolina, with a primary address located at 1 Kirkland Ranch Road, Napa, California 94558. At all relevant times, Kirkland was a member of the Knightsbridge Board of Directors.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based on the diversity of the citizenship of the parties, and the fact that the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over the defendants in this action by virtue of the fact that the subject contract, a stock subscription agreement, specifically provides for jurisdiction in New York, and that they have committed acts and omissions in violation of the contract.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(3), in that the Southern District of New York is the federal district specified by Knightsbridge, in the stock subscription agreement, to hear this dispute.

**FACTS**

11. Knightsbridge is a wine company founded in the fall of 2002 with the goal of creating a diversified international wine company consisting of premium estate vineyards around the world. Since forming, Knightsbridge has developed numerous wines lines, including the Guy Buffet International Collection and the soon to be released Andy Warhol Collection.

12. Knightsbridge was founded by plaintiff Patrick Shane and the defendant Joel Shapiro in the fall of 2002. More specifically, Knightsbridge was formed in the State of Nevada on October 8, 2002. The original two members of the board of directors were Messrs. Shane and Shapiro.

13. Prior to co-founding Knightsbridge, Messrs. Shane and Shapiro co-founded JS Capital LLC, an east coast based finance boutique that specialized in mergers and acquisitions and public corporate finance.

14. Upon formation, as set forth in the Articles of Incorporation, Knightsbridge was authorized to issue 40,000,000 common shares and 10,000,000 blank check preferred shares.

15. Despite the authorization of so many shares, the Knightsbridge originally issued only 17,000,000 shares, and no preferred shares. Of the 17,000,000 issued shares, 7,169,750 shares were issued to Joel Shapiro and a like amount was issued to Patrick Shane.

16. At a later date, additional shares were issued and additional shareholders were added, so that there were 21,000,000 issued shares. Mr. Shane and Mt. Shapiro each owned 7,000,000 of the issued shares.

17. On or about June of 2003, Mr. Shapiro advised Mr. Shane that in order to attract new management and induce capital investment into the company, Shane would have to relinquish much of his shares back to the company, for issuance to new investors and management.

18. In reliance of this representation, and upon the hope that it would strengthen the company and increase the net worth of his remaining 1,200,000 shares, Mr. Shane relinquished 5.8 million of his shares to Knightsbridge's treasury.

19. In July of 2003, Knightsbridge was in discussions to merge with Tech Net Communications Inc. ("Tech Net"), a company whose shares were publicly traded on the OTC Bulletin Board.

20. In anticipation of this merger, Knightsbridge had all of its shareholders complete a subscription agreement, formally acquiring their shares in Knightsbridge.

21. Mr. Shane completed such an application on July 7, 2003, "acquiring" his 1,200,000 shares of Knightsbridge for $1,200.

22. In fact, Mr. Shane received the shares in exchange for founding Knightsbridge, serving as

4

director of Knightsbridge and providing other services to Knightsbridge, as well as making numerous capital investments in Knightsbridge, including $7,000 which was wire transferred to Knightsbridge on June 28, 2002 and December 9, 2002.

23. In numerous SEC files subsequent to the date of the Subscription Agreement, Knightsbridge listed Mr. Shane as a holder of 1,200,000 shares of Knightsbridge, and further represented that all shares were fully paid and non-assessable.

24. On or about August 1, 2003, Knightsbridge completed a share exchange with Tech Net.

25. Pursuant to the share exchange, all 35 exiting shareholders of Knightsbridge traded two shares of their stock for 1 share of Tech Net stock. Accordingly, Mr. Shane received 600,000 shares of Tech Net for his 1,200,000 shares of Knightsbridge stock.

26. As a result of the Share Exchange, Knightsbridge became a wholly owned subsidiary of Tech Net. However, the 35 shareholders of Knightsbridge (prior to the share exchange) now owned approximately 82.89% of Tech Net's stock.

27. Through this process, Knightsbridge reverse merged itself into Tech Net, and converted itself into a public company.

28. On August 6, 2003, Tech Net voted to change its name to Knightsbridge Fine Wines, Inc., thus completing the transformation of Knightsbridge into a public company.

29. Also on August 6, 2003, Knightsbridge/Tech Net's Board of Directors approved a 2 for 1 forward stock split to be implemented in the form of a stock dividend to existing shareholders. The record date for the split was set at August 8, 2003, and the dividend was payable on August 13, 2003.

30. Pursuant to the forward stock split, as of August 13, 2003, Mr. Shane once again owned 1,200,000 shares of Knightsbridge (the "Shares").

31. Mr. Shane's Shares were restricted. However, the restriction was due to expire on or about August 1, 2004, and Mr. Shane's attorney was preparing the necessary Rule 144 letter which would permit the sale of the Shares.

32. On July 16, 2004, Mr. Shapiro sent a letter to Mr. Shane via Federal Express canceling Mr. Shane's Shares, claiming that they had not been paid for (the "Cancellation Letter").

33. In fact, as set forth above, the Shares had been fully paid for, as has been admitted by Knightsbridge in its SEC filings.

34. Moreover, at no time in the previous year had Mr. Shane been sent any notice demanding payment for the Shares, nor had he ever been sent any notices of default.

35. At the time the shares were cancelled, Knightsbridge stock was trading at $1.18 per share.

36. Thus, without any prior notice or opportunity to cure, Knightsbridge cancelled shares worth $1,416,000 for the alleged failure to pay the subscription agreement price of $1,200.

37. Upon information and belief, the Shares were cancelled solely to prevent Mr. Shane from placing his Shares on the open market.

38. According to the Cancellation Letter, the cancellation of the Mr. Shane's Shares was ordered by the board of directors of Knightsbridge.

39. On July 28, 2004, Mr. Shane's Attorney, Hank Schlueter, wrote a letter to Knightsbridge's general counsel, Martin Eric Weisberg (also a beneficial owner of Knightsbridge stock), advising that the cancellation of the Shares was improper and in bad faith, as the Shares had been fully paid for.

40. This letter followed numerous conversations between Mr. Schlueter and Mr. Weisberg, during which Mr. Schlueter advised Mr. Weisberg of the same thing.

41. When no action was taken to reverse their decision, Mr. Schlueter sent a follow up letter to

Mr. Weisberg on August 19, 2004. In the interim, documents establishing consideration paid for the Shares were provided to Knightsbridge.

42. On September 23, 2004, another letter was sent by Mr. Schlueter to Mr. Weisberg, rejecting his settlement offer.

43. Finally, on December 10, 2004, Mr. Shane's attorney, David J. Wolkenstein, Esq., sent a demand letter to Joseph Carr, President of Knightsbridge and Anthony Bryan, director, with copies sent to Mr. Weisberg, Philip Pearce, Michael Jeub and Larry Kirkland, demanding the return of the Shares and damages as a result of the diminution in value of the Shares.

44. In response to each of these letters, the company and the board of directors failed and refused to provide Mr. Shane with the return of his Shares, or the issuance of new shares to him.

45. Pursuant to the Subscription Agreement, the Subscription Agreement is to be construed in accordance with the laws of the State of New York and jurisdiction was to be solely in the New York State Supreme Court in New York County or the United States District Court, Southern District of New York.

### As And For a First Cause of Action
### Breach of Contract

46. Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

47. Plaintiff obtained the Shares pursuant to the Subscription Agreement.

48. The shares were fully paid for.

49. The cancellation of the shares was in breach of the subscription agreement.

7

50. As a result of the foregoing, plaintiff has been damaged, and Knightsbridge is liable to the plaintiff, in the amount of $1,416,000.

**As And For a Second Cause of Action**
**Conversion**

51. Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

52. Knightsbridge's actions described in this complaint, in canceling the Shares and presumably returning the shares to Knightsbridge's treasury, constitute conversion of the plaintiff's Shares.

53. Under applicable law, directors and officers of a corporation are individually liable for the torts of the corporation which they participated in.

54. Pursuant to the Cancellation Letter, the Directors of Knightsbridge directed cancellation of the Shares.

55. Upon information and belief, each of the Directors of the corporation knew full well that the Shares had been earned and paid for.

56. As a result of the foregoing, plaintiff has been damaged, and Knightsbridge and each of its Directors are liable to the plaintiff, in the amount of $1,416,000.

**As And For a Third Cause of Action**
**Breach of Fiduciary Duty**

57. Plaintiff hereby repeats and realleges all of the allegations of this complaint previously set forth above as if fully set forth herein at length, and in addition thereto, alleges as follows:

58. Each member of the board of directors of a corporation owes a duty of good faith and fair

dealing to each of its shareholder, as well as the obligation and duty to make independent, fully informed decisions. A special duty is owed to minority shareholders, who have little or no voice in the corporation.

59. The Directors' cancellation of plaintiff's Shares was in breach of this duty of good faith.

60. Even assuming, arguendo, that the initial cancellation of shares was taken in good faith, the refusal of the Directors to reverse the decision once it was demonstrated that consideration had been paid for the Shares, was taken in bad faith.

61. Upon information and belief, the plaintiff was not a unique case, but one of a number of shareholders whose shares were cancelled at the last second to prevent them from selling their shares on the open market.

62. Upon information and belief, the Directors cancelled plaintiff's Shares, as well as the shares of other shareholders, as a way of decreasing the issued shares of the corporation and concomitantly, increasing the value of their own shares.

63. Also, upon information and belief, the Directors cancelled plaintiff's Shares, as well as the shares of other shareholders, in an attempt to maintain the market price of the shares.

64. The Directors were afraid that an excess of shares hitting the market in August 2004, when the shares became unrestricted, would create an increased supply and depress the share price of the stock, thus lessening the net value of the company.

65. As a result of the foregoing, each of the Directors, both at the time that the cancellation of the shares was decided and ordered and at the later dates when the Directors failed to take corrective action, including Joel Shapiro, Michael L. Jeub, and Philip E. Pearce and Larry Kirkland, are personally, jointly and severally liable to the plaintiff, in an amount to be determined by the trier of fact, but in any event, in the minimal amount of $1,416,000.

WHEREFORE, Plaintiff Patrick Shane hereby demands judgment against the defendants as follows:

(1) On the First and Second Causes of Action, against Knightsbridge, in an amount of $1,416,000, plus interest from July 16, 2004; and

(2) On the Second and Third causes of action, against defendants Joel Shapiro, Anthony J.A. Bryan, Michael L. Jeub and Philip E. Pearce, jointly and severally, in the amount of $1,416,000.and

(3) For punitive damages; and

(4) for the costs, attorneys fees and disbursements in commencing and prosecuting this action; and

(5) for such other, further and different relief as the Court may deem just and proper.

Dated: New York, New York
       March 15, 2005

LAW OFFICES OF DAVID J. WOLKENSTEIN

By: _____/s/ David Wolkenstein_____.
       David J. Wolkenstein (DW 0398)
Attorneys for Plaintiff
22 West 38th Street, 12th Floor
New York, New York 100187
(212) 302-2600