UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Dock. No.: 05 CV 2953 (LLS)
PATRICK SHANE,

                                Plaintiff,

   -against-

360 GLOBAL WINE COMPANY, f/k/a
KNIGHTSBRIDGE FINE WINES, INC., JOEL SHAPIRO,
MICHAEL L. JEUB, PHILIP E. PEARCE and
LARRY KIRKLAND,

                                Defendants
------------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


                             LAUTERBACH GARFINKEL DAMAST & HOLLANDER, LLP
                                   22 W. 38th Street, 12th Floor
                                   New York, New York 10018
                                       (212) 304-2600
                                     *Attorneys for Plaintiff*


On the Brief:
David J. Wolkenstein (DW-0398)

**PRELIMINARY STATEMENT**

Plaintiff, Pat Shane ("Shane"), brings this motion for summary judgment, seeking summary judgment on its claims against the corporate defendant, 360 Global Wine Company, f/k/a Knightsbridge fine Wines ("Knightsbridge"). As set forth in this memorandum, the defendant failed to follow statutory requirements in cancelling the plaintiff's shares in the company. Accordingly, the cancellation of the shares was a nullity.

While this motion is brought just before the scheduled bench trial, the resolution of this motion in favor of the plaintiff will shorten what may be a three day trial, into a half-day trial on the issue of damages and director's liability only, greatly reducing the cost and expense of the trial, not to mention reducing the judicial resources spent on the trial. Accordingly, plaintiff requests that this motion be reviewed and determined prior to trial.

**STATEMENT OF FACTS**

Plaintiff, Patrick Shane, was a holder of Knightsbridge stock. While defendants do not concede that Shane was a "founder" of the company, they do admit that he an original director. It is also undisputed that Shane completed a stock subscription agreement, and received 1,200,000 shares of Knightsbridge, and at a later date, received a like amount of shares of Tech Net Communications, with which Knightsbridge merged. (Subsequent to the date of Shane's Tech Net shares, Tech Net changed its name to Knightsbridge Fine Wines.) The Subscription Agreement was dated July 7, 2003, and the Tech Net shares were issued on or about August 6 and 8, 2003.

On July 16, 2004, approximately two weeks before Shane's shares were due to become free trading, defendant Knightsbridge sent a letter to Shane advising him that his shares were cancelled

for non-payment (the "Cancellation Letter"). The Cancellation Letter was, in fact, entitled "notice of the cancellation of shares of common stock". Among other things, the letter stated that "[s]ince you have not paid the purchase price…for your shares, the Company is rejecting your subscription and canceling your stock certificate." The Cancellation Letter further specifically stated that the "subscription period has been closed by the company" and that the Shares were "null and void and may not be sold or otherwise transferred to any third party." The Cancellation letter did not provide Shane with any right or option to cure any alleged default in payment. The only right provided to Shane pursuant to the Cancellation Letter, was the right for Shane, within 20 days, to provide proof of prior payment of the shares.

While Shane claims to have more than paid for the shares, the issue of payment is not relevant on this motion. As set forth in the relevant statute, cancellation of shares for non-payment must comply with ceratin statutory rules. Since the defendant's failed to comply with the rules, the cancellation was null and void.

## LEGAL ARGUMENT

**DEFENDANT KNIGHTSBRIDGE VIOLATED SEVERAL STATUTORY PROVISIONS IN CANCELLING PLAINTIFF'S SHARES OF KNIGHTSBRIDGE STOCK, RENDERING THE CANCELLATION NULL AND VOID**

**A.** **Knightsbridge Failed to Provide Plaintiff with the Requisite Notice of Cancellation and Failed to Provide an Opportunity to Cure.**

New York's Business Corporation Law is indisputably straightforward, that shares of stock in a corporation may not be cancelled for non-payment, except upon 30 days notice. Specifically, BCL § 503 states in relevant part, that:

2

> BCL § 503 Subscription for shares; time of payment, forfeiture for default.
>
> \*          \*          \*
>
> (d) In the event of default in the payment of any installment or call when due, the corporation may proceed to collect the amount due in the same manner as any debt due the corporation or the board may declare a forfeiture of the subscriptions. . . . ***No forfeiture of the subscription shall be declared as against any subscriber unless the amount due thereon shall remain unpaid for a period of thirty days after written demand has been made therefor.*** (Emphasis added).

See also, 14 N.Y. Jur. 2d Business Relationships § 353, which states: "No forfeiture of a subscription can be declared as against any subscriber unless the amount due thereon remains unpaid for a period of thirty days after written demand has been made therefor."

The salient provisions of the statute are twofold: (i) there must be a written demand *for payment*; and (ii) the shareholder must be provided with 30 days notice.

In this case, the July 16 letter to the plaintiff from the company (the "Cancellation Notice") was not a written demand, but rather, a cancellation notice. The Cancellation Notice clearly stated that:

1) It was a "notice of the cancellation of shares of [the] common stock.";

2) that the "subscription period has been closed by the company";

3) "[s]ince you have not paid the purchase price…for your shares, the Company is rejecting your subscription and canceling your stock certificate."; and

4) that the Shares were "null and void and may not be sold or otherwise transferred to any third party."

There is nothing equivocal in any of these statements. The Cancellation Letter unquestionably declared *that the shares have already been cancelled.* Thus, the company has failed

to provide the plaintiff with the requisite notice under the statute, and the cancellation of the shares was improper and damaged the plaintiff.

It is anticipate that the defendants will argue that the plaintiff failed to respond to the letter by offering to pay for the shares. While disputed, the assertion, if made, is also irrelevant. The statute does not say that the company must allow the shareholder to cure if he so demands. Rather, the statute clearly states that the company must *provide* "written demand" to the plaintiff for payment of the shares. The Cancellation Letter simply does not make that demand, nor was there any other prior written demand. Accordingly, the cancellation of the shares was improper, null and void.

There Was No, and Can Be No, Substantial Compliance with the Statute

At a prior conference in this matter, it was suggested that perhaps the defendant was in substantial compliance in this matter. Clearly, as stated above, the letter cancelled the shares immediately. Furthermore, there was no offer made, or option provided, for plaintiff to make payment for the shares. Rather, the letter simply stated that: "If you have *proof of payment* of the shares to Knightsbridge Fine Wines, please provide to the Company's counsel within the next 20 days."

First, this letter specifically refers to proof of payment, i.e., proof of previous payment of the shares. It does not offer the plaintiff the opportunity to pay for the shares, if such "proof of payment" cannot be provided. Second, the letter provides 20 days for the plaintiff to provide such "proof of payment". Even assuming that the demand for "proof of payment" can somehow be construed as a solicitation for payment and opportunity to cure, the 20 days provided is 33% less than that required

4

by the statute, which is 30 days. A full third less of time provided for by the statute, cannot be said to be in substantial compliance with the statute.

In any event, close or even substantial compliance is not good enough. "Since it is a mere creature of statute, the power to forfeit or sell shares of stock must be pursued in the strictest accordance with the terms of the statute." 14 N.Y. Jur. 2d Business Relationships § 353, citing 18A Am. Jur. 2d, Corporations § 678. While no Court in New York has yet issued a published opinion on the strict compliance vis-a-vis BCL § 503, the Courts have strictly construed other BCL statutes intended to protect shareholders. For example, in Albany-Plattsburgh United Corp. v. Bell, 202 A.D.2d 800, 609 N.Y.S.2d 113 (3rd Dept. 1994), the Court, ruling on BCL § 623, stated that: "[t]he statutory requirements for preservation of shareholder's right to appraisal and payment are to be strictly construed and cannot be altered by courts." The Court went on to say that the statute "does not contain any provision for judicial excuse of noncompliance upon a showing of "good cause". Finally, quoting the New York Court of Appeals, the Albany-Plattsburgh Court stated that: "Where, as in this instance, the Legislature by precise language has created a right and with equal precision has set forth the procedure by which that right may be availed of, the courts may not limit or enlarge that right or alter that procedure." Albany-Plattsburgh, 609 N.Y.S.2d at 115, *citing*, Marcus v. R. H. Macy & Co., 297 N.Y. 38, 74 N.E.2d 228 (1947)

Each of these statement applies equally here. In BCL § 503, the New York legislature, by precise language has created a right (the right of a corporation to cancel the shares), and with equal precision has set forth the procedure by which that right may be availed of (demand for payment, and thirty (30) days notice and right to cure). Therefore, where the legislature has gone to such lengths, this Court "may not limit or enlarge that right or alter that procedure." BCL § 503 does not

contain any provision for judicial excuse of noncompliance upon a showing of "good cause", and the Court may not read one into the statute, even if the defendants could demonstrate good cause.

Since there was not strict (or any) compliance with BCL § 503(d) when cancelling the shares, and less than strict compliance is not acceptable, the Court must determine that the cancellation of the shares was improper.

**B.     Even If Knightsbridge Were in Technical or Substantial Compliance with BCL § 503(d), the Notice of Cancellation Must Fail for Not Being in Compliance with BCL § 503(c), Which Requires All Shareholders to Be Treated Alike.**

BCL § 503(c) states, in relevant part, as follows:

> Any call made by the board for payment on subscriptions shall be uniform as to all shares of the same class or of the same series. If a receiver of the corporation has been appointed, all unpaid subscriptions shall be paid at such times and in such installments as such receiver or the court may direct.

Plaintiff has alleged that the defendant has failed to do this, in that it failed to cancel the shares of the following shareholders, among others, who upon information and belief, did not pay for their shares at the time of the issuance of the subscription agreement: Jake Shapiro, Peter Bowthorpe, the Martin Weisberg Trust, the PLS Super Annuation Fund, Joe Carr, Paul Kretchmer, Richard Rosenblum, and Barry Alexander.

At his deposition, Jake Shapiro testified that these other shareholders did pay for their shares. However, despite repeated demands, no proof of payments by those shareholder for their shares has been provided. Plaintiff is entitled to a favorable inference – that the named individuals did not pay for their shares – as a result of the defendant's failure to provide the relevant, requested documents. See, FRCP Rule 37(c)(1). <u>Weeks v. ARA Services</u>, 869 F.Supp. 194 (S.D.N.Y. 1994)("Where

relevant information . . . is in the possession or control of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it. Baxter v. Palmigiano, 425 U.S. 308, 316-20, 96 S.Ct. 1551, 1557-59, 47 L.Ed.2d 810 (1976); Gray v. Great American Recreation Ass'n., 970 F.2d 1081, 1082 (2d Cir.1992); United States v. Torres, 845 F.2d 1165, 1169 (2d Cir.1988)")

      As set forth in the previous point, BCL § 503 must be strictly construed . Since defendant did not treat all shareholders equally, the cancellation of the plaintiff's shares must be considered null and void.

## **CONCLUSION**

Since Knightsbridge failed to cancel the shares in compliance with the law, the cancellation must be deemed improper, null and void, and the Court must therefore determine that the plaintiff was damaged as a result of not being permitted to sell his shares on the market since August 1, 2004. The Court should therefore continue with the scheduled trial, but limited only to the issue of directors' liability and damages.

Dated: New York, New York
October 27, 2006

>LAUTERBACH GARFINKEL DAMAST &
>HOLLANDER, LLP
>
>By:    s /David J. Wolkenstein
>        David J. Wolkenstein (DW-0398)
>22 W. 38th Street, 12th Floor
>New York, New York 10018
>(212) 304-2600
>Attorneys for Plaintiff

To: David P. Kasakove, Esq,
Bryan Cave LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 241-2000
Attorneys for Defendants